**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**ALL ELITE WRESTLING, LLC, & ANTONY KHAN,**

**Petitioners,**

**v.** **Case No. 3:26-cv-1481-WWB-PDB**

**RYAN NEMETH,**

**Respondent.**
______________________________________/

**PETITIONERS' RENEWED MOTION TO FILE UNDER SEAL**

Pursuant to Federal Rule of Civil Procedure 5.2, Middle District of Florida Local Rule 1.11, and this Court's Order dated July 7, 2026 (the "Order"), Petitioners All Elite Wrestling, LLC ("AEW") and Antony Khan ("Khan") (collectively, "Petitioners"), through undersigned counsel, file this Renewed Motion to File Under Seal (the "Renewed Motion"). Petitioners submit appropriately redacted versions of the Independent Contractor Wrestler Agreements (the "Agreements") between AEW and Respondent Ryan Nemeth ("Respondent"), attached as **Exhibits A, B, and C**, respectively. Petitioners respectfully request that the Court approve the proposed redactions and permit Petitioners to file and maintain the fully unredacted Agreements under seal.[1] In support, Petitioners state the following:

1. Petitioners initiated this action on June 5, 2026, by filing the Verified Complaint and Petition for Order Compelling Arbitration in Accordance with the Terms of Arbitration

---

[1] Pending the Court's order on this Motion, Petitioners will file a supplement attaching the redacted Agreements to their Petition (Doc 1).

Agreement (the "Petition") (*See* Doc. 1).

2. In support of the Petition, Petitioners attached three Agreements between AEW and Respondent as Exhibits. (*See* Docs. 6-1, 6-2, 6-3).

3. Because these Exhibits contain sensitive, proprietary, and competitively valuable commercial information belonging to AEW, Petitioners filed a Motion to File Under Seal (the "Motion to Seal") on June 9, 2026. (*See* Doc. 6).

4. On or about June 26, 2026, non-party Brandon Thurston (the "Intervenor") filed a Motion to Intervene for the Limited Purpose of Opposing the Motion to Seal, along with an Opposition to the Motion to Seal. (*See* Doc. 9).

5. On July 7, 2026, the Court entered its Order denying the Motion to Seal without prejudice (the "Order") because, at least in part, Petitioners "fail[ed] to comply with Local Rule 1.11 by failing to establish that redaction is unavailable." (*See* Doc. 10) at 5.

6. Although the Court denied the Motion to Seal, the Order recognized that Petitioners "have a legitimate interest in maintaining the confidentiality of the terms that they privately negotiated with [Respondent]." *Id*. at 4.

7. The Order further provides:

> ". . . [Petitioners] may move to file wholly unredacted versions of the agreements under seal but must file on the public docket redacted versions of the agreements that, at a minimum, include the information they have already made public."

*Id*. at 5.

8. Accordingly, Petitioners file this Renewed Motion requesting leave to file the unredacted Agreements under seal and the redacted versions (attached as Exhibits A–C) on the public docket. As directed by the Order, the public versions retain information

already disclosed in the Complaint, including the parties, the effective dates, the general subject matter of the Agreements, the arbitration provisions, and the choice-of-law provisions.

**MEMORANDUM OF LAW**

The common-law right of access to judicial records is fundamental because public access promotes confidence in the judicial process. *Chi. Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). This right ordinarily extends to the materials necessary for the public to understand the Court's decision, including a complaint, which is the cornerstone of any case. *F.T.C. v. AbbVie Prods. LLC*, 713 F.3d 54, 62 (11th Cir. 2013). The right of access, however, is not absolute. *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1245–46 (11th Cir. 2007). Federal Rule of Civil Procedure 5.2 and this Court's Order recognize that these competing interests can be balanced by filing redacted versions on the public docket while maintaining unredacted versions under seal. *See* Fed. R. Civ. P. 5.2(d), (f); (*See* Doc. 10) at 5.

Under *Romero*, courts must weigh the public's right of access against legitimate privacy and proprietary interests, considering the degree and likelihood of injury and the availability of less onerous alternatives to sealing. 480 F.3d at 1245–46. The public right of access may be overcome by a showing of good cause, which is established when disclosure would cause a "clearly defined and serious injury." *Teledyne Instruments, Inc. v. Cairns*, No. 6:12-cv-854-Orl-28TBS, 2013 U.S. Dist. LEXIS 150847, at *7 (M.D. Fla. Oct. 21, 2013) (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)). Here, the injury is concrete and provision-specific: public disclosure would reveal AEW's negotiated compensation, exclusivity, intellectual-property, event-performance, licensing,

booking, and merchandising terms—allowing competitors and prospective talent to exploit those terms without making the investments that produced them.

Local Rule 1.11 governs sealing and requires a motion to: (1) identify the material at issue; (2) explain why filing and sealing are necessary; (3) show why redaction, pseudonymization, or another alternative is unavailable or unsatisfactory; (4) propose a duration; and (5) identify who may retrieve the sealed material and any known non-party with an interest in the seal. *See* M.D. Fla. Loc. R. 1.11. Petitioners address each requirement in turn below.

Petitioners have good cause to file the unredacted Agreements under seal. The Middle District of Florida frequently permits sealing and redacting documents containing confidential business, financial, and contractual information when the proposed redactions are narrowly tailored. *See Ovalle v. Barton*, No. 6:23-cv-551-CEM-RMN, 2026 U.S. Dist. LEXIS 100310, at *5-6 (M.D. Fla. May 6, 2026) (granting motion to seal upon finding good cause to prevent disclosure of business information including "operations, financial projects, customer contracts, and budgeting"); *see also Loc. Access, LLC v. Peerless Network, Inc.*, No. 6:14-cv-399-Orl-40TBS, 2017 U.S. Dist. LEXIS 72511, at *8 (M.D. Fla. May 12, 2017) (collecting cases protecting the confidentiality of agreements by authorizing filing under seal). Here, redaction is both available and satisfactory for the discrete provisions identified below, while sealing remains necessary for certain proprietary and confidential terms. Petitioners therefore submit that good cause exists to maintain the unredacted Agreements under seal while filing public versions that preserve

the information already disclosed and omit only the specific commercially sensitive provisions described below:

**1. Description of Items to Be Sealed and Redacted**

The information Petitioners seek to file under seal consists of AEW's highly sensitive commercial information that is not publicly available, including business practices, internal economic structures, compensation arrangements, and negotiated rights and obligations. Although the Agreements constitute the entirety of AEW's contractual relationship with Respondent, only certain provisions bear directly on the Court's analysis in this case. The remaining redacted provisions need not be publicly exposed merely because the Agreements must be filed for the Court's review. *See Garcia v. Character Techs., Inc.*, No. 6:24-cv-1903-ACC-DCI, 2025 U.S. Dist. LEXIS 215157, at *22–23 (M.D. Fla. Oct. 31, 2025) ("The only information that need appear on the publicly filed documents is that information that the parties seek the Court to consider.") (authorizing redactions of agreement provisions not relevant to the Court's inquiry).

The redactions in Exhibits A–C are limited to commercially sensitive, industry-specific terms that the parties negotiated and that remain nonpublic. Disclosure would permit competitors and prospective talent to benchmark AEW's arrangements, target specific leverage points in negotiations, and replicate contractual terms without comparable investment. *See id*. at *18–19 (granting a motion to seal a licensing agreement because it "memorialized the licensing transaction" bargained between the parties and "disclosure of specific details concerning [the] agreement [] would cause acute competitive harm").

Petitioners have redacted the following, which they now seek leave to have filed under seal:

- Certain portions of Section 2, and the referenced Exhibit A, that define the scope of the parties' rights and obligations concerning intellectual property, the scope of AEW's business, and merchandising. Disclosure could reveal how AEW structures those rights in individual talent agreements.
- Sections 3, 4, and 5, which contain negotiated terms regarding, among other things, (i) intellectual property concerns, (iii) conditions and duties for events and training, (iv) allocation of costs, (v) promotion expectations, (vi) licensing responsibilities, marketing, and merchandising. Disclosure would expose AEW's allocation of rights, costs, and performance obligations in a way that competitors could use to benchmark or seek to replicate AEW's arrangements.
- Section 6, which sets forth exclusivity and protections for AEW's goodwill, identifies AEW's recognized competitors and describes the competitive harm and diminution of AEW's business that could result from disclosure. Public access would therefore reveal both the scope of AEW's exclusivity arrangements and the competitors against whom those protections operate.
- Section 7, which sets forth the compensation arrangement between AEW and Respondent. Disclosure would provide compensation benchmarks for current and prospective talent and weaken AEW's bargaining position in future negotiations.

- Section 8, which contains provisions concerning AEW's proprietary compensation arrangement with Respondent in addition to the parties' bargained for termination arrangement.
- Section 9, which contains AEW's highly sensitive and independently bargained for intellectual property rights.
- Sections 10.6 and 10.7, which contain highly sensitive and independently bargained for responsibilities of Respondent with respect to liability and costs associated with the parties' business relationship.
- Section 12, which contains representations and warranties between the parties and repeats highly sensitive information from Sections 3, 4, and 5 regarding the allocation of rights and duties. Redaction is necessary to prevent disclosure of the same sensitive information through duplicative provisions.
- A select portion of Section 17.6 concerning the ability to transfer or assign discrete rights under the Agreements. Disclosure could reveal the circumstances in which AEW permits or restricts transfer of negotiated rights and could inform counterparties' efforts to renegotiate those terms.
- Contact information and metadata, which has no bearing on the Court's analysis regarding the issues raised in the Petition, and to which the public, consequently, does not have a presumptive right of access, in addition to the data being sensitive in nature.

**2. Filing, Sealing, and Redacting the Agreements is Necessary**

Filing the Agreements is necessary because Petitioners ask the Court to compel Respondent to arbitrate his claims in the precise manner set forth in those Agreements.

Although the Court may need to consider provisions that Respondent might contend affect the making or performance of the arbitration agreement, the public need not have unrestricted access to the above-listed provisions because they are not relevant to that inquiry. Indeed, "[a]rbitration clauses are separable from the contracts in which they are included." *Home Quality Mgmt. v. Ace Am. Ins. Co.*, 381 F. Supp. 2d 1363, 1366 (S.D. Fla. 2005) ("Federal courts confronted with motions to compel arbitration are only authorized to address 'issues relating to the making and performance of the agreement to arbitrate' itself, not general challenges to the contract containing an arbitration clause as a whole.") (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967); *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 881 (11th Cir. 2005)).

Even if the Court needed to consider some of the above-listed provisions, sealing remains necessary to protect Petitioners' "legitimate interest in maintaining the confidentiality of the terms that they privately negotiated with [Respondent]." (*See* Doc. 10) at 4. Petitioners' interest in protecting these confidential business terms squarely overcomes the presumptive public right of access. Professional wrestling is a talent-driven venture, and a critical component of AEW's competitive advantage lies in its relationships with wrestlers and the negotiated terms of its agreements with them. AEW derives independent economic value from keeping those terms nonpublic because they reflect significant investments of time and resources in developing wrestling talent and generally include exclusivity provisions. Disclosure of the provisions identified above would inappropriately and unfairly allow competitors and prospective talent to compare compensation, exclusivity, intellectual-property allocations, event obligations, and

promotional and merchandising arrangements; use that information to target AEW talent or demand matching terms; and replicate AEW's arrangements without incurring the time and expense of developing comparable relationships. The resulting injury would be a direct loss of bargaining leverage and value created through AEW's investments. *See VAS Aero Servs., LLC v. Arroyo*, 860 F. Supp. 2d 1349, 1359 (S.D. Fla. 2012) (holding that the confidentiality of an agreement provided a company with independent economic value and that discovery by competitors would subject the company to injury because competitors could ascertain the needs of the company's clients without investing time and resources into developing a relationship with the client).

Finally, filing redacted versions of the Agreements on the public docket is necessary to properly balance Petitioners' legitimate interests against the common-law right of the public to inspect and copy judicial records. (*See* Doc. 10) at 5; Fed. R. Civ. P. 5.2(d), (f). The public versions disclose the information already included in the Petition and identified in the Order: the parties, effective dates, general subject matter, consideration, arbitration provisions, and choice-of-law provisions. The redactions apply only to the commercially sensitive provisions described above. This approach preserves the public's ability to understand why this action was filed and what the Court must decide, while avoiding the "unfair commercial advantage" that would result from public disclosure of AEW's private bargaining terms. *See Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983) (discussing the Court's duty to balance the public's right to inspect and copy records against private litigants' interests in maintaining confidentiality).

**3. Proposed Duration of Seal**

Petitioners propose that the seal remain in place during the pendency of this action and expire ninety (90) days after the final disposition of the case, including the exhaustion of any appeals, consistent with Local Rule 1.11(e), after which time the documents will be returned to Petitioners.

**4. Identification of Those Authorized to Retrieve Sealed Documents and Who Have an Interest**

The undersigned counsel are authorized to retrieve a sealed, tangible item. The Court can also return the Agreements to lead counsel for Petitioners, B. Tyler White, Esq., Jackson Lewis P.C., 501 Riverside Avenue, Suite 902, Jacksonville, Florida 32202. Respondent is the only individual, other than Petitioners, who has a legitimate interest in establishing or maintaining the seal.

## CONCLUSION

WHEREFORE, Petitioners respectfully request that this Court: (i) grant this Renewed Motion; (ii) permit the filing of the unredacted Agreements under seal; (iii) maintain the redacted Agreements on the public docket; (iv) deny any renewed request or objection by Brandon Thurston, or any new request or objection from any other purported intervenor, challenging Petitioners' redactions or otherwise moving to have unredacted (or less redacted) versions of the Agreements filed on the public docket; and (v) grant any other relief the Court deems just and proper.

## AI CERTIFICATE

To the extent that generative AI was used in any drafting of this filing, any language drafted by AI was personally reviewed by the filer and all legal citations reference actual, non-fictitious cases or cited authority and accurately reflect the contents of such authority.

Dated: September 24, 2026

Respectfully submitted,

**JACKSON LEWIS P.C.**
501 Riverside Avenue, Suite 902
Jacksonville, Florida 32202
Telephone: (904) 638-2655

*/s/ B. Tyler White*
B. Tyler White
Florida Bar No.: 0038213
James D. McGuire
Florida Bar No. 1032198
Tyler.white@jacksonlewis.com
James.mcguire@jacksonlewis.com
Jacksonville.Docket@jacksonlewis.com

*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2026, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

*/s/ B. Tyler White*
B. Tyler White

4896-8020-3723, v. 8