# EXHIBIT A

**ALL ELITE WRESTLING**
**INDEPENDENT CONTRACTOR WRESTLER AGREEMENT**

This Independent Contractor Wrestler Agreement (this "Agreement") is made effective as of March 1, 2023 (the "Effective Date"), by and between All Elite Wrestling, LLC, a Delaware limited liability company ("AEW"), and Ryan Nemeth (a/k/a Hollywood Hunk), an individual ("Wrestler").

A. AEW is engaged in the business throughout the world of organizing, publicizing, arranging, staging and conducting professional wrestling exhibitions and Events (as defined on Exhibit A) and representing professional wrestlers in the promotion and exploitation of a professional wrestler's name, likeness, personality and other intellectual property; and

B. Wrestler (i) is duly licensed, as required, to engage in professional wrestling exhibitions and events and (ii) desires AEW to arrange professional wrestling exhibitions and events for Wrestler and to assist Wrestler in obtaining public exposure through live exhibitions, media programs, public appearances, merchandising activities and other activities.

NOW THEREFORE, in consideration of the mutual promises and agreements as set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties intending to be legally bound, do hereby agree as follows:

1. DEFINED TERMS

1.1. Unless otherwise defined, all capitalized terms used in this Agreement have the meaning given to them on Exhibit A.

2. TERM AND TERRITORY

2.1. The term of this Agreement shall commence on the Effective Date and continue in full force and effect until February 29, 2024 ("Scheduled Expiration Date"), unless and until earlier terminated or extended in accordance with the terms of this Agreement (the "Term").

[redacted]

[redacted]

3. WORKS AND RIGHTS

[redacted]

[redacted]

[redacted]

4. WRESTLER OBLIGATIONS AND ACKNOWLEDGMENTS

[redacted]

[redacted]

[redacted]

[redacted]

5. AEW OBLIGATIONS AND ACKNOWLEDGMENTS

[redacted]

[redacted]

6. EXCLUSIVITY; NONCOMPETITION; PROTECTION OF GOODWILL

[redacted]

[redacted]

7. COMPENSATION

[redacted]

8. TERMINATION

[redacted]

[redacted]

9. INTELLECTUAL PROPERTY

[redacted]

[redacted]

10. RELEASE, WAIVER AND INSURANCE

10.1. AS USED IN THIS AGREEMENT, (A) THE TERM "RELEASING PARTIES" MEANS AND REFERS TO EACH OF WRESTLER, WRESTLER'S HEIRS, NEXT OF KIN, SPOUSE (OR SPOUSAL EQUIVALENT OR LIFE PARTNER), MINORS, GUARDIANS, LEGAL REPRESENTATIVES, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS AND AFFILIATES, AND (B) THE TERM "RELEASED PARTIES" MEANS AND REFERS TO EACH OF AEW, AEW INDEMNIFIED PARTIES, ANY NETWORK, INTERNET SITE, APPLICATION OR OTHER DISTRIBUTOR THAT MAY TELECAST OR OTHERWISE DISTRIBUTE THE WORKS, SPONSORS OF AEW OR THE AEW INDEMNIFIED PARTIES, EVENT VENUES, ALL MEDICAL PERSONNEL RENDERING SERVICES IN CONNECTION WITH AEW, AND EACH OF THEIR RESPECTIVE PARENTS, SUBSIDIARIES, AFFILIATES AND RELATED PARTIES, SUCCESSORS AND ASSIGNS, AND THE RESPECTIVE PRESENT AND FORMER DIRECTORS, OFFICERS, MANAGERS, EMPLOYEES, AGENTS, CONTRACTORS, SUBCONTRACTORS, PARTNERS, SHAREHOLDERS, REPRESENTATIVES AND MEMBERS OF EACH OF THE FOREGOING ENTITIES.

10.2. ON BEHALF OF WRESTLER AND THE OTHER RELEASING PARTIES, WRESTLER HEREBY ACKNOWLEDGES, APPRECIATES AND AGREES AS FOLLOWS:

(a) WRESTLER AND THE OTHER RELEASING PARTIES HEREBY UNCONDITIONALLY AND IRREVOCABLY RELEASE, INDEMNIFY AND FOREVER DISCHARGE AEW, EACH OF THE OTHER AEW WRESTLERS, AND EACH OF THE OTHER RELEASED PARTIES FROM AND AGAINST ANY AND ALL CLAIMS, LIENS, AGREEMENTS, CONTRACTS, ACTIONS, SUITS, COSTS, ATTORNEYS' FEES, DAMAGES, JUDGMENTS, ORDERS AND LIABILITIES OF WHATEVER KIND OR NATURE IN LAW, EQUITY OR OTHERWISE, WHETHER NOW KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, AND WHETHER OR NOT CONCEALED OR HIDDEN (COLLECTIVELY, THE "RELEASED CLAIMS"), ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, PREPARATION FOR, PARTICIPATION AND APPEARANCE IN EVENTS AND ACTIVITIES ASSOCIATED WITH THE EVENTS, WHETHER OCCURRING BEFORE, DURING OR AFTER WRESTLER'S ACTUAL PARTICIPATION IN EVENTS, OR THE PRODUCTION AND EXPLOITATION OR EXHIBITION OF EVENTS, INCLUDING AEW'S EXERCISE OF ANY RIGHTS GRANTED BY WRESTLER IN THIS

AGREEMENT, INCLUDING WITHOUT LIMITATION ANY AND ALL CLAIMS FOR ANY INJURY, ILLNESS, DAMAGE, LOSS OR HARM TO WRESTLER OR WRESTLER'S PROPERTY, OR WRESTLER'S DEATH, OR ANY INJURY, ILLNESS, DISEASE, DAMAGE, TRESPASS, LOSS OR HARM TO ANY RELEASING PARTIES OR ANY THIRD PARTIES OR ANY OF THEIR PROPERTY AND ANY AND ALL CLAIMS REGARDING INFRINGEMENT BROUGHT BY THIRD-PARTIES FOR ANY MERCHANDISE, COSTUME OR OTHER ITEMS PROVIDED BY OR USED BY WRESTLER IN CONNECTION WITH THE SERVICES. WRESTLER, ON BEHALF OF WRESTLER AND THE OTHER RELEASING PARTIES, AGREES NOT TO SUE OR BRING ANY PROCEEDING AGAINST ANY OF THE RELEASED PARTIES FOR ANY RELEASED CLAIM, WHETHER PRESENTLY KNOWN OR UNKNOWN AND WHETHER CAUSED BY THE NEGLIGENCE OF ANY OF THE RELEASED PARTIES, INCLUDING, BUT NOT LIMITED TO, ACTIONS FOR PERSONAL INJURY, PROPERTY DAMAGE, OR ANY OTHER ACTION BASED UPON OR RELATING TO ANY OF THE RELEASED CLAIMS.

(b) WRESTLER ACKNOWLEDGES THAT WRESTLER HAS AGREED TO PARTICIPATE IN A HIGHLY STRENUOUS PHYSICAL ACTIVITY—SPECIFICALLY PROFESSIONAL WRESTLING. PROFESSIONAL WRESTLING INVOLVES ACTIVITIES THAT CAN RESULT IN SEVERE AND PERMANENT PHYSICAL INJURY, INCLUDING, BUT NOT LIMITED TO, IRREVERSIBLE NEUROLOGICAL TRAUMA, INCLUDING, BUT NOT LIMITED TO, ANY SHORT-TERM OR LONG-TERM EFFECTS OF CONCUSSIVE OR SUB-CONCUSSIVE CONTACT WITH WRESTLER'S HEAD, DISABILITY OR DEATH. WRESTLER ACKNOWLEDGES AND AGREES THAT BECAUSE OF THE NATURE OF PROFESSIONAL WRESTLING AND THE EVENTS, WRESTLER COULD BE FACED WITH, INJURIES AND/OR MEDICAL CONDITIONS, INCLUDING, BUT NOT LIMITED TO, DEHYDRATION, EXHAUSTION, POTENTIAL BROKEN LIMBS, TORN LIGAMENTS, MUSCLES, OR OTHER INJURIES THAT MAY RESULT IN A PERIOD OF INCAPACITATION OR INABILITY TO COMPETE IN SUBSEQUENT EVENTS OR OTHER ATHLETIC COMPETITIONS. WRESTLER KNOWINGLY AND FREELY ASSUMES ALL SUCH RISKS, BOTH KNOWN AND UNKNOWN, EVEN IF ARISING FROM THE NEGLIGENCE OF THE RELEASED PARTIES, OTHER WRESTLERS OR OTHERS, AND ASSUMES FULL RESPONSIBILITY FOR WRESTLER'S PARTICIPATION.

10.3. WRESTLER, ON BEHALF OF WRESTLER AND THE OTHER RELEASING PARTIES, HEREBY INDEMNIFIES AND HOLD HARMLESS AEW AND THE OTHER RELEASED PARTIES FROM ANY AND ALL CLAIMS, DEMANDS, LOSSES AND LIABILITIES ARISING OUT OF RELATED TO ANY INJURY, DISABILITY OR DEATH WRESTLER MAY SUFFER, OR ANY LOSS OR DAMAGE TO PERSON OR PROPERTY, WHETHER ARISING FROM THE NEGLIGENCE OF THE RELEASED PARTIES OR OTHERWISE, TO THE FULLEST EXTENT PERMITTED BY LAW.

10.4. THE FOREGOING RELEASES AND DISCHARGES SHALL BE EFFECTIVE AS BARS TO ALL RELEASED CLAIMS OF WHATEVER CHARACTER, NATURE AND KIND, KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, HEREINABOVE SPECIFIED TO BE SO BARRED. IN FURTHERANCE OF THIS INTENTION, THE RELEASING PARTIES EXPRESSLY WAIVE ANY AND ALL RIGHTS AND BENEFITS CONFERRED UPON THEM BY THE PROVISIONS OF SECTION 1542 OF THE CALIFORNIA CIVIL CODE, WHICH STATES AS FOLLOWS:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

10.5. Wrestler acknowledges, for himself or herself and on behalf of each of the other Releasing Parties, that the foregoing waiver of the provisions of Section 1542 of the California Civil Code was bargained for separately and is a material term and condition of this Agreement. Wrestler for himself or herself and each of the other Releasing Parties, expressly acknowledges that this Agreement shall be given full force and effect in accordance with each and all of its express terms and provisions, including

those terms and provisions relating to unknown and unsuspected claims, demands, and causes of action, if any, to the same effect as those terms and provisions relating to any other claims, demands, and causes of action hereinabove described. Wrestler for himself or herself and each of the other Releasing Parties, acknowledges that each fully aware that they might hereafter discover facts or other information in addition to or different from those which they now know or believe to be true, with respect to the subject matter of the Released Claims. Nevertheless, the Releasing Parties intend to hereby fully, finally, and forever settle and release all matters, disputes, differences, known or unknown, suspected or unsuspected, which might now exist or heretofore might exist in connection with the Released Claims. The releases given herein shall be and remain in effect as a full and complete release notwithstanding the discovery or existence of any such additional or different facts or information.

[redacted]

11. CONFIDENTIALITY

11.1. Wrestler hereby acknowledges and agrees that in further consideration of AEW's entering into this Agreement, Wrestler shall not, at any time during the Term of this Agreement, or after the termination or expiration of this Agreement for any or no reason whatsoever, disclose to any person or entity, organization, or publication, or utilize for the benefit or profit of Wrestler or any other person, entity or organization, any sensitive or otherwise confidential business information (including any Event results or details), the terms and conditions of this Agreement, idea, proposal, secret or any proprietary information obtained while with AEW or regarding AEW, its employees, independent contractors, agents, officers, directors, subsidiaries, Affiliates, divisions, representatives, or assigns ("Confidential Information"). Confidential Information includes, without limitation, such items as reports, business plans, sales information, cost or pricing information, lists of suppliers or customers, venue lists, talent lists, story lines, scripts, story boards, prizes, awards, Event results, story lines, scripts, story boards or ideas, routines, accessories, gags, costumes or parts of costumes, crowns, championship, title or other belts, inventions, and any other tangible or intangible materials written, composed, submitted, added, improvised, or created by or for Wrestler in connection with this Agreement, information regarding any

contractual relationships maintained by AEW or the terms thereof or any and all information regarding wrestlers engaged by AEW.

11.2. Notwithstanding the foregoing, Wrestler's obligation of confidentiality shall not include information which: (a) at the time of disclosure was generally available to the public; (b) after its disclosure, becomes generally available to the public other than through any act or omission by Wrestler; or (c) is required to be disclosed by any court of competent jurisdiction or Applicable Law, provided, that prior written notice of such disclosure is immediately furnished to AEW in order to afford AEW an opportunity to seek a protective order against such disclosure. Wrestler acknowledges and agrees that Wrestler's agreement to be bound by the terms of this Section 11 is a material condition of AEW's willingness to use and continue to use Wrestler's services.

12. REPRESENTATIONS AND WARRANTIES

[redacted]

13. INDEMNIFICATION

13.1. Wrestler shall indemnify, defend, and hold harmless AEW and each of its Affiliates and their respective officers, directors, employees, attorneys, representatives, contractors, sponsors, partners, shareholders, managers, members and agents (collectively, the "AEW Indemnified Parties") from and against any and all Losses, whether arising out of a claim involving a third party or between the parties to this Agreement, as a result of or in connection with (a) any breach of any representation, warranty, covenant or other agreement, or any misrepresentation, by Wrestler in this Agreement, or any claim by a third party which, without regard to the merits of the claim, would constitute such a breach

or misrepresentation, (b) any taxes associated with Compensation (or Royalty), (c) any use of the Wrestler Identity or (d) any act or omission (or alleged act or omission), whether on, prior to or after the date of this Agreement, by or on behalf of Wrestler or its past, present or future Affiliates. Upon the request of AEW, and without limiting any of AEW and its Affiliates' set off rights set forth in Section 8.5, Wrestler shall advance to AEW or another AEW Indemnified Party an amount equal to any Losses, whether arising out of a claim involving a third party or between the parties to this Agreement, as those Losses are incurred.

13.2. The AEW Indemnified Parties shall provide Wrestler with prompt written notice of any third-party claim, action, or proceeding for which such AEW Indemnified Party is entitled to indemnification pursuant to Section 13.1 (each, a "Third-Party Claim"). AEW shall have the right to control and direct the investigation, defense, and settlement of each such Third-Party Claim at Wrestler's expense. Wrestler will, if requested by AEW, provide reasonable assistance to AEW, at Wrestler's sole expense, in defense of any such Third-Party Claim.

14. LIMITATION OF LIABILITY

14.1. EXCEPT IN CONNECTION WITH (A) WRESTLER'S BREACH UNDER SECTIONS 3, 4, 6, 9, 11, or 12 OR (B) A CLAIM SUBJECT TO INDEMNIFICATION HEREUNDER, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY OR ANY OTHER PERSON OR ENTITY CLAIMING RIGHTS THROUGH SUCH PARTY FOR ANY CONSEQUENTIAL, INCIDENTAL, EXEMPLARY, PUNITIVE, SPECIAL OR INDIRECT DAMAGES ARISING FROM OR RELATED TO THIS AGREEMENT, WHETHER OR NOT FORESEEABLE AND REGARDLESS OF WHETHER IT HAD ADVANCE NOTICE OF THE POSSIBILITY OF ANY SUCH DAMAGES, AND REGARDLESS OF THE FORM OF CLAIM, WHETHER IN CONTRACT, NEGLIGENCE, STRICT LIABILITY, OR OTHER LEGAL OR EQUITABLE THEORY.

15. REMEDIES

15.1. The parties agree that because of the special, unique, and extraordinary nature of the obligations of AEW and Wrestler respecting all rights and licenses concerning bookings, promotions, Works, Events and AEW Intellectual Property, which are the subject matter of this Agreement, any breach or threatened breach of this Agreement by Wrestler will cause AEW irreparable injury which cannot be adequately measured by monetary relief. As a consequence, AEW shall be entitled to injunctive and other equitable relief against Wrestler to prevent Wrestler's breach or default hereunder and such injunction or equitable relief shall be without prejudice to any other rights, remedies, or damages which AEW is legally entitled to obtain and shall not require AEW to post a bond or other form of security in connection therewith.

15.2. The sole right of Wrestler as to any breach hereunder by AEW or relating to its participation in AEW or any Event shall be the recovery of money damages, if any, which in no case (in the aggregate) shall exceed the Compensation. In no event shall the rights herein (including the Rights) granted by Wrestler to AEW terminate by reason of any breach of this Agreement by AEW. In no event may Wrestler, nor any other person or entity acting on his or her behalf or for his or her benefit, seek, and Wrestler hereby irrevocably waives any right to seek or obtain, injunctive or other equitable relief of any kind to enjoin or otherwise restrain or limit AEW from conducting any Event or otherwise operating AEW.

16. DISPUTE RESOLUTION

16.1. Subject to the last sentence of this Section 16 and AEW's right to seek injunctive or equitable relief pursuant to Section 15.1 above, Wrestler agrees that all disputes between Wrestler and AEW, including, without limitation, any dispute relating to any matter arising under this Agreement or any dispute concerning the performance, application or interpretation of any provision of this Agreement, shall be resolved for final, binding, and conclusive arbitration conducted before a single arbitrator in Duval County, Florida and administered by JAMS, Inc. pursuant to its Comprehensive Arbitration Rules and Procedures. Provided, however, that nothing in this provision is intended to require arbitration of any claims or disputes that cannot be arbitrated or subject to pre-dispute arbitration agreements under controlling federal or state law, including as provided under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act. Judgment may be entered on the arbitrator's award in any court having jurisdiction and the sole grounds on which the arbitrator's decision may be appealed are those set forth in the Federal Arbitration Act, 9 U.S.C. §10(a). Notwithstanding the foregoing, if there is a dispute, disagreement, controversy or claim regarding the application, interpretation or enforcement of any AEW Rule (as determined by AEW in its sole and absolute discretion), such disagreements, disputes, controversies or claims will be resolved solely by AEW or its applicable affiliates, in accordance with AEW Rules.

17. MISCELLANEOUS

17.1. Sections 1-3, 8.3-8.5 and 9-17 shall survive any termination or expiration this Agreement.

17.2. Wrestler acknowledges and agrees that Wrestler's status at all times shall be that of an independent contractor, rather than employee, of AEW. Wrestler shall execute and hereby irrevocably appoints AEW attorney-in-fact to execute, if Wrestler refuses to do so, any instruments necessary to accomplish or confirm the foregoing or any and all of the rights granted to AEW herein. Wrestler may not bind or otherwise obligate AEW in any manner whatsoever without obtaining the prior approval of AEW. AEW and Wrestler hereby acknowledge and agree that Wrestler's compensation as set forth in Section 7 above shall represent compensation for services as an independent contractor and shall be paid subject to all tax requirements based on the current rules, laws, regulations, and treaties of where Wrestler performs services and Wrestler's tax residency. Wrestler further acknowledges that AEW makes no warranties as to any tax consequences regarding payment of such compensation, and specifically agrees that the determination of any tax liability or other consequences of any payment made hereunder is Wrestler's sole and complete responsibility and that Wrestler will pay all taxes, if any, assessed on such payments under the applicable laws of any federal, state, local or other jurisdiction. The parties acknowledge and agree that the compensation set forth in Section 7 shall be the only compensation payable to Wrestler with respect to his or her services performed hereunder and that Wrestler shall not be eligible to participate in any of the employee benefit plans or arrangements of AEW.

17.3. This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and all prior understandings, negotiations, and agreements are merged in this Agreement. There are no other agreements, representations, or warranties not set forth herein with respect to the subject matter hereof, and the parties expressly acknowledge that any representation, promise, or inducement by any party to any other party that is not embodied in this Agreement is not part of this Agreement, and they agree that no party shall be bound by or liable for any such alleged representation, promise, or inducement not set forth herein.

17.4. This Agreement may not be changed or altered except in writing signed by AEW and Wrestler. The failure of either party to exercise any rights or options as granted herein, or to require the performance by the other party hereto of any provision of this Agreement, or the waiver by either party of any breach of this Agreement, shall not prevent a subsequent exercise or enforcement of such provision or be deemed a waiver of any subsequent breach of the same or any other provision of this Agreement. Any waiver or consent shall be in writing and signed by the party claimed to have waived or consented.

17.5. If any provision or clause of this Agreement, or portion thereof, shall be held by any court or other tribunal of competent jurisdiction to be illegal, invalid, or unenforceable in such jurisdiction, the remainder of such provision shall not thereby be affected and shall be given full effect, without regard to the invalid portion. It is the intention of the parties that, if any court construes any provision or clause of this Agreement, or any portion thereof, to be illegal, void, or unenforceable because of the duration of such provision or the area or matter covered thereby, such court shall reduce or modify the duration, area, or matter of such provision, and, in its reduced or modified form, such provision shall then be enforceable and shall be enforced.

17.6. [redacted]

(b) Wrestler shall not transfer, assign, sublicense, pledge, encumber or delegate any of Wrestler's rights or obligations hereunder to any person or entity and any attempt by Wrestler to do so shall be void *ab initio*.

17.7. Any notices required or desired hereunder (other than routine operational communications) shall be in writing and shall be deemed given when personally delivered or if mailed by certified mail, return receipt requested or registered mail, when deposited in the United States mail, postage prepaid, or if sent by courier service, when deposited with such service, or if sent by overnight delivery service, on the next business day following delivery to such service, or if sent via email transmission to the email address given below, on the day of transmission. Notices shall be addressed as follows (unless either party at any time or times designates another address for itself by notifying the other party thereof as provided herein):

<u>To AEW</u>:

All Elite Wrestling, LLC
[redacted]

<u>To Wrestler</u>:

Ryan Nemeth
[redacted]

17.8. This Agreement is governed by and will be construed in accordance with the laws of the State of Florida, applicable to Agreements made and to be performed entirely in the State of Florida.

17.9. Wrestler understands and acknowledges that, from time to time during the Term, he or she may request that attorneys employed by or associated with AEW represent Wrestler's interests in connection with certain contracts and/or other matters relating to Wrestler's career. Wrestler thus confirms his or her understanding and acknowledgement that, in connection with such representation, such attorneys (including attorneys who may have previously represented, and who may in the future represent, AEW in a role potentially adverse to Wrestler) may represent Wrestler, either individually and/or concurrently with representing AEW. Such representation during the Term may constitute a potential conflict of interest. Accordingly, Wrestler understands and acknowledges by his or her execution of this Agreement that, he or she further waives any such conflict of interest arising from such representation of Wrestler by AEW's attorneys. Wrestler further understands and acknowledges that he or she has been encouraged to seek the advice of and retain independent counsel in connection with all matters relating to his or her interests, including contract negotiation and any and all other issues relating to his or her career, as well as advice with respect to the meaning and impact of the consent and waiver set forth in this Section 17.9, and Wrestler hereby represents and warrants to AEW that she knowingly either has and will retained such independent counsel, or has decided or will decide intentionally not to do so. The consent and waiver set forth in this Section shall remain in effect during the Term, unless revoked in writing by Wrestler and delivered to AEW pursuant to Section 17.7.

17.10. This Agreement, any amendments thereto, may be executed in counterparts, each of which shall be deemed to be an original and all of which taken together shall be deemed to constitute the same instrument. Counterparts may be executed either in original or electronic form and the parties adopt any signatures received by a .pdf/email as original signatures of the parties.

[*signature page follows*]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date.

**ALL ELITE WRESTLING, LLC**

**By:** ______________________________

**Antony Khan**
**CEO, General Manager and Head of Creative**

**Wrestler**

[redacted]__________

**Print Name: Ryan Nemeth**

**EXHIBIT A**

[redacted]

[redacted]

[redacted]